UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 19 Cr. 408 (MKB) |
| ISKYO ARONOV, et al., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## JOINT MOTION FOR A BILL OF PARTICULARS

MEHLER LAW PLLC
Gordon Mehler
Emily Golub
747 Third Avenue, 32nd Floor
New York, NY 10017
Tel. (212) 661-2414

*Attorneys for Defendant Michael
Konstantinovskiy*

May 25, 2020

**TABLE OF CONTENTS**

Table of Cases ...................................................................................................2

I. Summary Overview .......................................................................................3

II. Factual Background .....................................................................................5

    A. The Charges in the Indictment ...............................................................5

    B. Request for and Denial of Bill of Particulars .........................................7

    C. Government Document Productions .......................................................7

III. Requested Particulars ................................................................................7

IV. The Requested Particulars Are Necessary to Allow Defendants to
    Adequately Prepare for Trial ........................................................................9

    A.  Applicable Law ....................................................................................9

    B.  The Court Should Order the Government to Produce the Requested
        Particulars ..........................................................................................10

  Conclusion .....................................................................................................15

## TABLE OF CASES

*United States v. Barnes*, 158 F.3d 662 (2d Cir. 1998) ....................................................................8

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) (per curiam) ...................... 7, 8, 10, 11

*United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000) .................................................. 8

*United States v. Chalmers*, 410 F.Supp.2d 278 (S.D.N.Y. 2006) ............................................8, 11

*United States v. Cephas*, 937 F.2d 816 (2d Cir. 1991) ................................................................. 7

*United States v. Ganim*, No. 3:01cr263, 2002 WL 31643045 (D. Ct. Nov. 20, 2002) ................12

*United States v. Kahale*,  789 F. Supp.2d 359 (E.D.N.Y. 2009)………................................... 7, 12

*United States v. Luna,* No.3:05cr58, 2006 WL1668006 (D. Ct. May 17, 2006) ........................12

*United States v. Mandell*, 710  Supp.2d 368 (S.D.N.Y. 2010)  ………....................................... 7

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) ......................................... 10, 11

*United States v. Pinto-Thomaz*, 352 F. Supp.3d 287 (S.D.N.Y. 2018)  ................................. 7, 11

*United States v. Rajaratnam*, No. 09-cr-1184, 21010 WL 2788168  ...........................................11

*United States v. Russo*, 483 F. Supp.2d 301 (S.D.N.Y. 2007) .......................................................7

*United States v. Walsh,* 194 F.3d 37, 47 (2d Cir. 1999) ............................................................. 7

## I.  Summary Overview

Defendants Michael Konstantinovskiy, joined by co-defendants Iskyo Aronov, Avraham Tarshish, Tomer Dafna, and Michael Herskowitz (collectively, "Defendants"), respectfully submit this Memorandum of Law in Support of Defendants' Joint Motion for a Bill of Particulars.[1]

Despite the uncharted complications of the past two or so months, the Defendants in this case have still attempted, despite the dislocations and other difficulties, to wade through the enormous cache of discovery provided by the government. Instead of files correlated with even minimal care to the charges in the indictment, instead of mostly relevant material designed to provide clear  notice of what the prosecution will attempt to prove, instead of concern for the avoidance of unfair surprise, the prosecution seems to have loaded up and dispatched a vast and often disorganized collection  of  files.  The implicit message, intended or not, has been: "Have fun in trying to sort through this mess to find what you need."

Indeed, we have not found what we need, and on several occasions we have written to the prosecution to address these issues.  Initially, Mr. Tarshish's legal team sent requests for particulars to the prosecution, which turned them down in their entirety.  (The requests are set out and discussed below.)  As per the Court's directive, we then followed up more recently in an effort to narrow the issues for the Court, also completely to no avail.  Once again, it seems unlikely there will be any forward movement anytime soon without the Court's intervention.

---

[1] Counsel for Michael Konstantinovskiy submits this memorandum on his behalf, and on behalf of counsel for all other defendants in this action.  *See* Declaration of Gordon Mehler, dated May 22, 2020 ("Mehler Decl.") ¶ 6.

To summarize upfront why particulars are important here, and why our motion should be granted, we list several interrelated reasons that track the points raised separately with the prosecution:

First, there are seven select properties highlighted in the indictment, yet the government indicates that it may try to introduce evidence at trial from an array of *hundreds* of properties. We do not know which ones, and we do not know the particular allegations concerning individual properties beyond the select seven.  But a defending legal team under our Constitution should not be forced to become like a defending army, unsure whether a sneak attack will come from the left flank, from the right flank or from behind.

Second, the prosecution team seems to have paid little attention to what was actually turned over.  While there is lots of completely irrelevant information, fully three of the seven select properties discussed in the indictment do not even have accompanying bank record files in the discovery.

Third, as mentioned, apart from an assigned index number, the documents themselves often are not sorted in any rational way. For example, the prosecution evidently subpoenaed or otherwise obtained records from Nationstar Bank.  The bank turned over records concerning 35 properties that stretches to over 118,000 pages.  And all of the pages are jumbled together, in no way demarcated even by individual property.  Even a word search does little to narrow what the defense must spend its limited time searching for, given uncertainty as to whether a given property is even contemplated in the prosecution's supposed arsenal of *hundreds* of properties. Perhaps searching through 118,000 pages is an exercise in vain.  The prosecution refuses to narrow its list for reasons solely tied to its own advantage.  By refusing to provide narrowly

4

tailored particulars requested by the Defendants, the prosecution is engaging in an unfair waste of the Defendants' limited resources. Due process demands more.

Finally, and more broadly, to date the government has unleashed over 132 gigabytes of indiscriminate discovery. To give the Court a sense of the sheer magnitude of these documents, these 132 gigabytes are the equivalent of 736,884 pages. In effect, the prosecution has turned discovery into an offensive weapon designed to neutralize the defense by drowning it in a chaotic sea of documentation.

For all of these reasons, individually and collectively, the Court must intervene to insure fairness, and, therefore, this motion for a bill of particulars should be granted.

## II. Factual Background

### A. The Charges in the Indictment

Five defendants are charged in a seven-count indictment ("Indictment" or "Ind.") that alleges principally that they participated in a conspiracy to defraud lenders and certain borrowers by providing them with false, misleading and incomplete information to induce them to execute short sales at fraudulently depressed prices, thereby causing losses to the lenders and, at times, the borrowers. The Indictment charges that the five defendants and others, including three Short Sale Co-Conspirators, worked together to purchase hundreds of properties in this way and flip them for large profits.

In furtherance of this, the Indictment alleges, the defendants paid or promised to pay borrowers to induce them to sell their homes to the defendants in short sale transactions; misled banks and borrowers; and filed fraudulent UCC-1 financing statements on properties they intended to purchase to deter other buyers. Ind. ¶¶ 20-23.

5

The charges in the Indictment span a seven-year period from 2012 to 2019.  The alleged Short Sale Scheme is divided into two counts: the MIP Scheme (Count 1) and the Exclusive Homes Scheme (Count 2).  MIP was a real estate development company allegedly formed by Aronov; Exclusive Homes was a real estate investment company allegedly formed by Tarshish.

The Indictment provides seven "examples" of short sale transactions executed by the defendants as part of the alleged Short Sale Scheme, but says nothing at all about any others properties among the *hundreds* the prosecution is including in its case.  Those "Select Transactions," the years in question, and the defendants allegedly associated with them are:

A.  175 Vernon Avenue, Brooklyn, NY (2013-14): Aronov, Konstantinovskiy
B.  1219 Jefferson Avenue, Brooklyn, NY (2013-14): Aronov, Konstantinovskiy, Dafna, Tarshish, Herskowitz
C.  1319 Jefferson Avenue, Brooklyn, NY (2013-14): Aronov, Konstantinovskiy, Dafna, Tarshish
D.  1055 Herkimer Street, Brooklyn, NY (2013-14): Aronov, Konstantinovskiy, Dafna, Tarshish
E.  177 Lewis Avenue, Brooklyn, NY (2014-15): Aronov, Dafna, Tarshish
F.  2403 Dean Street, Brooklyn, NY (2013-16): Aronov, Dafna, Tarshish, Herskowitz
G.  65 Glen Street, Brooklyn, NY (2017-18): Aronov, Dafna, Tarshish

Ind. ¶¶ 26-35.

Count One alleges a conspiracy under 18 U.S.C. § 1349 to commit wire and bank fraud in violation of 18 U.S.C. §§ 1343 and 1344.  All five defendants are charged in the Count One conspiracy.  The Indictment alleges long-ago conduct, that is, from approximately March 2013 through December 2014, the defendants allegedly defrauded the "Short Sale Victims," including financial institutions, to obtain money and property by means of materially false and fraudulent pretenses, representations and promises in connection with the MIP Scheme.  Ind. ¶ 37.

Count Two alleges an identical conspiracy under 18 U.S.C. § 1349 to commit wire and bank fraud in violation of 18 U.S.C. §§ 1343 and 1344, this time in connection with the

Exclusive Homes Scheme, from January 2014 through November 2018.  All five defendants are charged in the Count Two conspiracy.  Ind. ¶ 39.

Counts Three through Seven allege substantive wire fraud violations related to the MIP and Exclusive Homes schemes identified in Counts One and Two. (18 U.S.C. §§ 1343).  The wire transfers in Counts Three through Seven are associated with five of the seven Select Transactions described in paragraphs 26-35 of the Indictment and alluded to earlier.   Once again, nothing at all is said to identify the remaining *hundreds* of properties, and, even worse, three of the elementary bank files have not been provided for almost half of these Select Transactions. Mehler Decl. ¶ 5.

### B.  Request for & Denial of Bill of Particulars

Earlier in the year defendants jointly requested that the government provide additional particulars on the charges in the Indictment.  After that was declined, Defendants made an additional unsuccessful attempt to narrow the particulars issue with the prosecution, as per the Court's directive.  Mehler Decl., ¶¶ 2-3.  Defendants tailored their requests narrowly to the allegations in the Indictment, focusing on the transactions alleged to be part of the charged scheme and the documents and statements from each transaction that are alleged to be false. They are reproduced below.

### C.  Government Document Productions

The discovery received to date is voluminous and difficult to review.  The government has produced in electronic format approximately 132 GB of discovery – hundreds of thousands of pages – over the course of four productions.  The documents consist largely of bank records, email correspondence and property loan files.  Mehler Decl. ¶ 4.

## III.  Requested Particulars

Defendants request that the Court order the government to furnish the following particulars:

### *Count One – The MIP Scheme*

1)  With respect to the allegation in paragraph 37 of the Indictment that the defendants conspired to devise a scheme to defraud one or more "Short Sale Victims, " including financial institutions, and "to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises," please identify:

   a)  each short sale transaction that is alleged to be part of this scheme;
   b)  as to each short sale transaction, the alleged misrepresentation(s) made and the document(s) in which they appear;
   c)  the alleged victim of each short sale transaction;
   d)  the co-conspirators who allegedly participated in each short sale transaction; and
   e)  the loss, that allegedly resulted from each such transaction.

### *Count Two – The Exclusive Homes Scheme*

2)  With respect to the allegation in paragraph 39 of the Indictment that the defendants conspired to devise a scheme to defraud one or more "Short Sale Victims" and "to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises," please identify:
   a)  each short sale transaction that is alleged to be part of this scheme;
   b)  as to each short sale transaction, the alleged misrepresentation(s) made and the document(s) in which they appear;
   c)  the alleged victim of each short sale transaction;
   d)  the co-conspirators who allegedly participated in each short sale transaction; and
   e)  the loss that allegedly resulted from each such transaction.

### *Counts Three through Seven*

3)  With respect to the wire fraud counts alleged in Counts Three through Seven, as to each count, please identify:
   a)  the alleged misrepresentation(s) made in connection with the identified short sale transaction and the document(s) in which they appear; and
   b)  the alleged victim of each count.

### *Paragraphs Eighteen through Thirty-Five*

To the extent that it is not already included in your answers to requests 1-3, please provide the following information:

4) With respect to the allegations in paragraph 18 of the Indictment, please identify:
   a) each property which is alleged to be part of the scheme to "purchase hundreds of properties at fraudulently depressed prices and then resell or 'flip' the properties for large profits;"
   b) the "false, misleading and incomplete information" allegedly provided in each transaction "to induce [the Short Sale Victims] to execute short sales at fraudulently depressed prices," and any document(s) in which such information appears;
   c) the alleged victim in each such transaction;
   d) the co-conspirators who allegedly participated in each transaction; and
   e) the loss that allegedly resulted from each such transaction, to the extent applicable.

5) With respect to the allegations in paragraph 21, please identify each instance in which the co-conspirators allegedly arranged to damage a property to lower its appraised value.

6) With respect to the allegations in paragraph 22, please identify each instance in which a borrower was allegedly misled regarding the nature of a deed transfer.

7) With respect to the allegations in paragraph 23 that co-conspirators often filed fraudulent UCC-1 Financing Statements on properties they intended to purchase, please identify:
   a) the fraudulent UCC-1 Financing Statements; and
   b) the allegedly false information in each document.

**IV. The Requested Particulars Are Necessary to Allow Defendants to Adequately Prepare For Trial**

**A.  Applicable Law**

Defendants move pursuant to Federal Rule of Criminal Procedure 7(f) for an order compelling the government to provide a bill of particulars.  Rule 7(f) "permits the defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."  *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam); *United States v. Pinto-Thomaz*, 352 F. Supp.3d 287, 302 (S.D.N.Y. 2018); *United States v. Mandell*, 710

9

Supp.2d 368, 384 (S.D.N.Y. 2010); *see also United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.

1999); *United States v. Kahale,* 789 F. Supp.2d 359, 371-72 (E.D.N.Y. 2009).

Whether to grant a bill of particulars rests within the sound discretion of the trial court.

*United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991); *United States v. Russo*, 483 F.

Supp.2d 301 (S.D.N.Y. 2007).  Although a bill of particulars  should not be granted if it is

merely a ploy to ascertain the government's evidence or theories, "if necessary to give the

defendant enough information about the charge to prepare his defense, it will be required even if

the effect is disclosure of evidence or theories."  *United States v. Barnes*, 158 F.3d 662, 665 (2d

Cir. 1998) (internal quotations omitted); *see also United States v. Chalmers*, 410 F.Supp.2d

278,286 (S.D.N.Y. 2006).

It is clear that the "Government does not fulfill its obligation merely by providing

mountains of documents to defense counsel who [a]re left unguided as to which documents" are

relevant.  *Bortnovsky*, 820 F.2d at 574-75; *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233-

34 (S.D.N.Y. 2000) ("[I]t is no solution to rely solely on the quantity of information disclosed by

the government; sometimes, the large volume of material disclosed is precisely what necessitates

a bill of particulars.").  Further, the defendant should not be forced to prepare unnecessary

defenses.  *Bortnovsky*, 820 F.2d at 574.

**B.  The Court Should Order the Government to Provide the Requested Particulars**

Here, the particulars requested are necessary to allow defendants to prepare for trial and

prevent unfair surprise.  Five defendants are charged with defrauding lenders and certain

borrowers by providing them with false, misleading and incomplete information to induce them

to execute short sales at fraudulently depressed prices.  The Indictment alleges a Short Sale

Scheme spanning seven years and includes *hundreds* of properties, but the government has thus

10

far identified only seven properties alleged to be part of the scheme. Notwithstanding this, the discovery contains bank records and property loan files for more than 350 real estate transactions.

As an initial matter, given the massive volume of discovery in this case, much of which is due to the production of bank records and loan files for hundreds of real estate transactions, defendants are unable to prepare for trial without knowing which properties are alleged to be part of the scheme. This is not a case where the discovery makes up for the lack of notice provided in the Indictment. To the contrary, the voluminous discovery is a significant reason why defendants require a bill of particulars. Without adequate notice of the transactions that each defendant must defend against at trial, defense counsel will have to sift through the mountains of discovery to try to guess which transactions the government will allege were criminal in a game of prosecutorial Whac A Mole. At best, this would be a waste of the defendants' limited time and resources; more likely, given the volume of discovery, it would prove impossible.

Beyond this basic threshold, particulars are necessary to allow the defendants to identify, as to each transaction within the scheme, the documents and statements that are alleged to be false, the defendants and alleged co-conspirators who are alleged to have participated, the identities of the alleged victims, and the alleged loss that resulted. This information is essential to defendants' ability to effectively prepare their defense at trial. Even assuming the government narrows the list of transactions down from 350, reviewing some subset of transactions for this information would require defendants to sort through hundreds or even thousands of pages of discovery per property only to guess at which elements and parties are relevant in each instance, or whether the transaction will even figure in the government's proof at all.

11

The Indictment also alleges that the defendants paid or promised to pay borrowers to induce them to sell their homes to the defendants in short sale transactions, arranged to damage properties to lower their appraised value, misled borrowers regarding the nature of deed transfers, and filed fraudulent UCC-1 Financing Statements on properties they intended to purchase to deter other buyers.  To the extent the Indictment provides examples of some of these allegations, the government has not represented that these examples are exhaustive.

All of defendants' requested particulars are narrowly tailored to seek basic information necessary to defend against these charges.  There is ample authority for the district court to order the government to provide particulars in circumstances like this.  In *Bortnovsky*, for example, the Court of Appeals held that particulars should have been provided where defendants were charged with submitting false claims for burglary losses, but the indictment failed to identify which of the burglaries were phony.  820 F.2d at 574-75.  The Court held that because the government had failed to identify the phony burglaries prior to trial, it had impermissibly shifted the burden of proof to defendants to prove that the remaining burglaries were real.  There is little difference here, except that the subject matter is real estate transactions.  *Id*.  The Court rejected the notion that the government had fulfilled its obligation to provide adequate notice merely by providing documents that included materials regarding the burglaries that were ultimately proved to be fake, which is all the government has done here.  *Id*.

Relying on *Bortnovsky*, the district court in *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000), a Medicare fraud prosecution involving false claims, held that the government had failed to comply with its obligation to provide adequate notice because, while it had provided over 200,000 pages of discovery relating to 2,000 Medicare claims, it had not informed defendants which claims were false or how they were false.  91 F. Supp. 2d at 571.

12

The court ordered the government to provide numerous particulars about each false and misleading claim that it intended to prove at trial, including identifying each item on the form alleged to be false and misleading, the manner in which such item was allegedly false, and other details about the claim. *Nachamie*, 91 F. Supp. 2d at 574.

The need for particulars is even more acute here, with almost four times as many pages of discovery as were involved in *Nachamie* or *Bortnovsky*. As in those cases, simply providing voluminous discovery about real estate transactions without identifying the specific transactions that are alleged to be criminal, and, as to each such transaction, the statements and documents that are alleged to be false, does not satisfy the government's obligation to provide adequate notice to the defense.

Many motions for bills of particulars are no doubt resolved informally, without the issuance of written opinions by courts, but a review of more recent case law within the courts of the Second Circuit demonstrates that bills of particulars are granted under similar facts. For example, Judge Rakoff, in an insider trading case, ordered a bill of particulars "as to the identities of unindicted co-conspirators." *Pinto-Thomaz*, 352 F. Supp.3d at 303. The identities of co-conspirators are particularly important for our client, who is alleged to have served as a middleman who processed short sales for others. *See also United States v. Rajaratnam*, No. 09-cr-1184, 21010 WL 2788168 at *4 (S.D.N.Y. Jul.13, 2010) (granting bill of particulars in insider trading case that was "far larger" than others, in part because it involved 31 different stocks—which is ten times fewer than the more than 300 properties potentially at issue in this case.)

Judge Matsumoto in *Kahale* faced a situation where, as here, the defendant had "extensive and legitimate dealings with a wide range of associates." 789 F. Supp. 2d at 371. Thus, she ordered a bill of particulars to identify who was involved "for each paragraph of the

13

indictment" that only specified "others."  *Id.* at 374.  She did not order the same concerning the identities of alleged victims because there were only four boxes of discovery, with indexed documents that were "not particularly voluminous or burdensome."  *Id.*

Similarly, a pair of summary decisions from the District of Connecticut ordering bills of particulars hinged on the breadth of the charges and the volume of the discovery.  In *United States v. Luna,* No.3:05cr58, 2006 WL1668006 at *2 (D. Ct. May 17, 2006), Judge Underhill held that "a bill of particulars is necessary to bring focus to the massive amounts of discovery produced" and the alleged conspiracy that spanned seven years.  And Judge Arterton, in a corruption case involving the mayor of Bridgeport, ordered the government to particularize 65 benefits allegedly showered on the mayor, and further ordered the government to "link those benefits" to the charges.  *United States v. Ganim*, No. 3:01cr263, 2002 WL 31643045 (D. Ct. Nov. 20, 2002).

These decisions give further support to an order to the prosecution to furnish particulars here so as to make the document review being undertaken conducive to a fair and early identification of properties and alleged co-conspirators and victims that will be the subjects of the prosecution.

## CONCLUSION

For the reasons set forth herein, the Court should order the government to provide the

particulars requested by Defendants.

Dated:  May 25, 2020
      New York, NY

                                  Respectfully submitted,


                                  */s/ Gordon Mehler*
                                  */s/ Emily Golub*
                                  Mehler Law PLLC
                                  747 Third Avenue, 32nd Floor
                                  New York, NY 10017

                                  *Attorneys for Defendant Michael*
                                  *Konstantinovskiy*