UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNITED STATES OF AMERICA,

- against -

ISKYO ARONOV a/k/a ISAAC ARONOV,
MICHAEL KONSTANTINOVSKIY a/k/a
MICHAEL KAY, TOMER DAFNA, AVRAHAM
TARSHISH a/k/a AVI TARSHISH, and MICHAEL
HERSKOWITZ,

                        Defendants.

**MEMORANDUM & ORDER**
19-CR-408 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        On September 6, 2019, a grand jury returned an indictment against Defendants Iskyo Aronov, Michael Konstantinovskiy, Tomer Dafna, Avraham Tarshish, and Michael Herskowitz, charging them with conspiracy to commit wire and bank fraud in violation of 18 U.S.C. §§ 1349 and 3551 *et seq.* ("Counts One and Two"), and substantive counts of wire fraud related to specific transactions in violation of 18 U.S.C. §§ 1343, 2, and 3551 *et seq.* ("Counts Three through Seven").[1] (Indictment ("Ind.") ¶¶ 36–42, Docket Entry No. 1; Grand Jury Investigations Covering Mem., annexed to Ind. as Ex. 3, Docket Entry No. 1-3.) The Indictment alleges that Defendants engaged in conspiracies to defraud lenders and certain borrowers (collectively, the "Short Sale Victims") "by providing them with false, misleading and incomplete information to induce them to execute short sales at fraudulently depressed prices, thereby causing losses to the lenders and, at times, the borrowers" (the "Short Sale Schemes"). (Ind. ¶ 18.)

---

[1] The Indictment was unsealed on September 12, 2019. (Order dated Sept. 12, 2019, Docket Entry No. 8.)

On October 16, 2023, Defendants[2] jointly moved to dismiss the Indictment pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, arguing that the Indictment alleged a theory of wire fraud recently abrogated by the Supreme Court's decision in *Ciminelli v. United States*, 598 U.S. 306 (2023).[3]  (Defs.' Mem. 6–13.)  Defendants also moved in the alternative pursuant to Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure for the Court to conduct an *in camera* review of the grand jury minutes and the grand jury instructions "to ensure that Defendants were not indicted based on the now invalid 'right-to-control' theory of wire fraud."  (*Id.* 14.)  The Government opposes the motion.  (Gov't Opp'n.)

For the reasons set forth below, the Court denies Defendants' motion to dismiss the Indictment.

I.  **Background**

   a.  **The Indictment**

According to the thirty-three-page Indictment, from in or about December of 2012 to January of 2019, Defendants "worked both together and separately to purchase hundreds of properties at fraudulently depressed prices and then resell or 'flip' the properties for large profits."  (Ind. ¶ 18.)  The Short Sale Schemes "originated at [My Ideal Property ("MIP")] under the direction of [Aronov] with the assistance of [Konstantinovskiy and Tarshish], Short-Sale Co-Conspirators 1, 2 and 3, and others" (the "MIP Scheme") and the scheme was later replicated by

---

[2]  Isaac Aronov pleaded guilty to Counts One and Two in July of 2022, and therefore has not joined the motion to dismiss the Indictment.  (Minute Entry dated July 11, 2022).

[3]  (Defs.' Joint Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 299-1; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 299; Gov't Opp'n to Defs.' Mot. ("Gov't Opp'n"), Docket Entry No. 300; Defs.' Reply Mem. in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 302.)

Tarshish and Dafna "at Exclusive Homes with the assistance of Short-Sale Co-Conspirator 2 and others" (the "Exclusive Homes Scheme").  (*Id.* ¶ 19.)

The Indictment provides a detailed overview of the MIP and Exclusive Homes Schemes, (*see id.* ¶¶ 18–25), and alleges that "[d]uring different and sometimes overlapping periods of time, various groupings of [Defendants] worked together in the [Short Sale Schemes]," (*id.* ¶ 25). The Indictment alleges that Defendants conspired to defraud lenders and certain borrowers by "providing them with false, misleading, and incomplete information to induce them to execute short sales at fraudulently depressed prices, causing losses to the lenders and, at times, the borrowers." (*Id.* ¶ 18.)  The Indictment also alleges, among other things, that Defendants "typically promised to pay or paid the borrower money to induce him or her also to sign (a) an agreement with a real estate broker to list the property for sale; (b) an authorization to allow a third-party negotiator to negotiate the short sale with the lender on the borrower's behalf; and (c) a contract to sell the property to a corporate entity controlled by the [Defendants]," (*id.* ¶ 20), and that "[a]fter the borrower agreed to participate in a short sale of a property with the [Defendants], the [Defendants] often took control of the property, evicted or paid any tenants living in the property to move out and, on occasion, arranged to damage the property to lower its appraised value," (*id.* ¶ 22).

The Indictment specifies seven "select transactions" that Defendants and the Short Sale Co-Conspirators executed as part of the Short Sale Schemes, involving properties located at: 175 Vernon Avenue, Brooklyn, New York; 1219 Jefferson Avenue, Brooklyn, New York; 1319 Jefferson Avenue, Brooklyn, New York; 1055 Herkimer Street, Brooklyn, New York; 177 Lewis Avenue, Brooklyn, New York; 2403 Dean Street, Brooklyn, New York; and 65 Glen Street, Brooklyn, New York.  (*Id.* ¶¶ 27–33.)

### b. Procedural background

On October 16, 2023, Dafna, Tarshish, Herskowitz, and Konstantinovskiy filed a joint motion to dismiss the indictment on the grounds that the wire fraud allegations as charged fail to state an offense in the wake of the Supreme Court's decision in *Ciminelli*, 598 U.S. 306, and in the alternative to review the grand jury minutes to determine if the grand jury was properly instructed on the law. (Defs.' Mem. 1.) The government responded on November 6, 2023, (Gov't Mem.), and Defendants replied on November 20, 2023, (Defs.' Reply).

## II. Discussion

### a. The Court denies Defendants' motion to dismiss the Indictment

Defendants argue that the Indictment relies upon the "right-to-control" property theory that the Supreme Court recently rejected in *Ciminelli*, 598 U.S. 306. (Defs.' Mem. 8–9.) In particular, Defendants argue that the "property interest" the government alleges as the object of the fraud in this case is the right to control "potentially valuable economic information necessary to make discretionary economic decisions," which the Supreme Court has rejected as a basis for a Section 1343 offense. (*Id.* at 9–10.)

The government argues that the Indictment properly alleges that the object of Defendants' alleged fraud was money and real property. (Gov't Mem. 6–7.) The government also argues that the fact that the means of the alleged conspiracy involved depriving the victims of crucial information and making false representations does not inform whether the conspiracy's object is properly pleaded under *Ciminelli*. (*Id.* at 8–9.)

Indictments must contain both "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and a "citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1);

4

*United States v. Dupree*, 870 F.3d 62, 70 (2d Cir. 2017) (same).  An indictment is to be "read . . . 'to include facts which are necessarily implied by the specific allegations' therein." *United States v. Faison*, 393 F. App'x 754, 757 (2d Cir. 2010) (quoting *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002)).  "[C]ommon sense and reason are more important than technicalities" and the indictment "need not be perfect." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001)); *Faison*, 393 F. App'x at 757 ("[I]t is not necessary to allege facts with technical precision, but rather, to outline the essential elements [required by Rule 7(c)(1)].").  "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Stringer*, 730 F.3d at 124 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also Dupree*, 870 F.3d at 70 ("An indictment that does not set out all of the essential elements of the offense charged is defective." (quoting *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012))).

Pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, a defendant may move to dismiss an indictment for various defects, including a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B); *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) ("[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." (citation omitted)).  Courts must accept as true the allegations in an indictment for purposes of evaluating a motion to dismiss.  *See United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999); *United States v. Raniere*, 384 F. Supp. 3d 282, 292 n.1 (E.D.N.Y. 2019) ("[T]he court must assume that the [i]ndictment's allegations are true for the purposes of a motion to dismiss." (citing *United States v. Wey*, No. 15-CV-611, 2017 WL

5

237651, at *5 (S.D.N.Y. Jan. 18, 2017))). As a result, the Second Circuit "ha[s] consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Ghayth*, 709 F. App'x 718, 723 (2d Cir. 2017) (alteration in original) (quoting *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000)).

The Supreme Court in *Ciminelli* rejected the right-to-control theory of wire fraud that had been previously accepted by the Second Circuit. *Ciminelli*, 598 U.S. at 316; *see also SEC v. Govil*, 86 F.4th 89, 105 (2d Cir. 2023) (noting that the Supreme Court "rejected the right-to-control theory"). *Ciminelli* involved a scheme under which certain political operatives tailored a state-funded bidding process so that the defendant's construction company was nearly guaranteed to receive a designation that would ensure it would be chosen for construction projects that were part of a state-funded program. *Ciminelli*, 598 U.S. at 309–10. The government in *Ciminelli* relied exclusively on the "right-to-control" theory of wire fraud. *Id.* at 310–11.

Under the previously-accepted right-to-control theory, the government could establish wire fraud "by showing that the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions." *Govil*, 86 F.4th at 105. In rejecting this theory, the Supreme Court noted that "the wire fraud statute reaches only traditional property interests" and that "[t]he right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest" and therefore could not form the basis for a conviction under the federal fraud statutes. *Ciminelli*, 598 U.S. at 316; *see also Govil*, 86 F.4th at 105; *United States v. Mansouri*, No. 22-CR-34, 2023 WL 8430239, at *3 (W.D.N.Y. Dec. 5, 2023) (noting that the Supreme Court rejected the right-to-control theory

6

in *Ciminelli* and "held that the wire fraud statute reaches only traditional property interests such as money and that those interests do not include the right to information needed to make discretionary economic decisions").

The Indictment does not allege a right-to-control theory of wire fraud. The Indictment alleges that Defendants "conspired to defraud lenders . . . and certain borrowers . . . by providing them with false, misleading and incomplete information to induce them to execute short sales at fraudulently depressed prices." (Ind. ¶ 18.) However, the Indictment also alleges, among other things, that Defendants: (1) "worked both together and separately to purchase hundreds of properties at fraudulently depressed prices and then resell or 'flip' the properties for large profits," (*id.*); (2) contacted borrowers who were in default on their mortgage loans and in foreclosure proceedings and "attempted to persuade the borrowers to sell their homes to [Defendants] in short sale transactions," (*id.* ¶ 20); (3) "typically promised to pay or paid the borrower money to induce him or her also to sign (a) an agreement with a real estate broker to list the property for sale; (b) an authorization to allow a third-party negotiator to negotiate the short sale with the lender on the borrower's behalf; and (c) a contract to sell the property to a corporate entity controlled by [Defendants]," (*id.*); (4) "worked together to ensure that [Defendants] purchased the property for the lowest price that the lender or servicer would accept" after a borrower agreed to sell his or her property, rather than marketing the property to other prospective buyers, (*id.* ¶ 21); (5) filed fraudulent UCC-1 financing statements on properties Defendants intended to purchase "so as to deter, or obtain money from, other prospective buyers," (*id.* ¶ 23); and (6) conspired to "obtain money and property from [financial institutions] by means of materially false and fraudulent pretenses, representations and

7

promises," and to "obtain moneys, funds, credits, and other property owned by, and under the custody and control of, such financial institutions," (*id.* ¶¶ 37, 39, 41).

The Indictment thus alleges that Defendants schemed to defraud others of money and real property based on false or fraudulent pretenses, rather than solely depriving the victims of "valuable economic information needed to make discretionary economic decisions." *Ciminelli*, 598 U.S. at 316. *Ciminelli* therefore does not foreclose the theories of wire fraud alleged in the Indictment. *See, e.g.*, *Mansouri*, 2023 WL 8430239, at *3 (denying the defendant's motion to dismiss the indictment alleging that the defendant submitted multiple applications for loans under the Paycheck Protection Program and Economic Injury Disaster Loan program that included "materially false and fraudulent information, pretenses, representations, and promises supported by false and fictitious documents" created by the defendant and his employees, because "unlike the *Ciminelli* indictment, the indictment [in *Mansouri*] sa[id] nothing about depriving the lenders or the [Small Business Association] of their 'right to control' property" and instead alleged a scheme "whose object was money itself"); *United States v. Pierre*, Nos. 22-CR-19, 22-CR-20, 2023 WL 4493511, at *15 (S.D.N.Y. July 12, 2023) (concluding that *Ciminelli* did not apply because the indictments alleged that the defendants had conspired to commit healthcare fraud where they "fraudulently obtain[ed] the contracts themselves, rather than depriving the victim of valuable economic information for deciding to whom the contracts would be awarded").

    **b.   The Court denies Defendants' motion for an *in camera* inspection of the grand jury minutes**

Defendants argue that, in the alternative, the Court should conduct an *in camera* review of the grand jury minutes and the legal instructions given to the grand jury to ensure that Defendants were not indicted based on the right-to-control theory of wire fraud, as well as allow

the production of the grand jury minutes under a protective order. (Defs.' Mem. 14.) Defendants argue that it is unclear whether the government relied on the right-to-control theory in charging the grand jury, and that Defendants need not allege government misconduct or "gross and prejudicial irregularity" in order to meet the "particularized need" standard. (*Id.* at 16–17; Defs.' Reply 3–4 (quoting Gov't Opp'n at 9–10).) Defendants also argue that disclosure of the grand jury material is "necessary to avoid injustice" because confirmation that the grand jury was instructed regarding an improper theory of wire fraud, or not instructed on a viable theory of wire fraud, would warrant dismissal of the Indictment. (Defs.' Mem. 18–19.) Finally, Defendants argue that disclosure would not harm the secrecy of the grand jury proceedings, which took place over four years ago. (*Id.*)

The government argues the Court should deny Defendants' request to inspect the grand jury minutes because the Indictment is valid on its face and Defendants have alleged nothing beyond the face of the Indictment to suggest any improper instructions to the grand jury. (Gov't Opp'n 9–10.)

A district court may authorize the disclosure of grand jury minutes to a defendant where he "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). However, "[g]rand jury proceedings are presumptively secret, and a defendant seeking the disclosure of grand jury materials bears a heavy burden." *United States v. Schlegel*, 687 F. App'x 26, 30 (2d Cir. 2017) (citing *In re Petition of Craig*, 131 F.3d 99, 104 (2d Cir. 1997)). "While the interests in grand jury secrecy are less compelling when the grand jury's activities have terminated, a 'showing of particularized need' is nonetheless required to justify disclosure of grand jury materials." *Id.* (quoting *United States v. Sobotka*, 623 F.2d 764, 768 (2d Cir. 1980)); *see also United States v. Calk*, 87 F.4th

9

164, 186 (2d Cir. 2023) ("[T]o overcome the presumption of regularity that attaches to a grand jury proceeding, the defendant, who bears the burden of persuasion, 'must present particularized proof of an improper purpose.'" (quoting *United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013))). "To prove a particularized need, parties seeking disclosure must show that the 'material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *United States v. Ulbricht*, 858 F.3d 71, 107 (2d Cir. 2017) (quoting *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996)). Further, a "review of grand jury minutes should not be permitted without concrete allegations of Government misconduct." *Schlegel*, 687 F. App'x at 30 (quoting *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994)); *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) (stating that a defendant must make "specific factual allegations of government misconduct"), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010). This standard applies equally to a defendant's request for the Court to conduct *in camera* review of the minutes. *See United States v. Smith*, 105 F. Supp. 3d 255, 260 (W.D.N.Y. 2015); *United States v. Laster*, No. 06-CR-1064, 2007 WL 3070599, at *1–3 (S.D.N.Y. Oct. 19, 2007), *aff'd*, 313 F. App'x 369 (2d Cir. 2009).

Defendants have not met their burden of showing that a "particularized need" exists such that an *in camera* review of the grand jury instructions should be conducted. Defendants' argument relies solely on their assertion that the Indictment alleges a right-to-control theory. (Defs.' Mem. 16–18; Defs.' Reply 3–4.) As discussed, the Indictment does not allege a right-to-control theory of wire fraud. Defendants therefore only speculate that the grand jury was improperly instructed on a right-to-control theory of liability rather than a theory of wire fraud

10

the object of which was money or property. *See, e.g.*, *United States v. Hoey*, No. 11-CR-337, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) ("Mere speculation that . . . the Government may have improperly instructed the grand jury . . . falls far short of the showing to overcome the presumption of secrecy." (quoting *United States v. Forde*, 740 F. Supp. 2d 406, 414 (S.D.N.Y. 2010))); *see also id.* ("[N]ot every change in the law that could touch upon the propriety of a grand jury instructions will warrant an *in camera* inspection[.]").

Accordingly, the Court denies Defendants' motion to inspect the grand jury minutes.

### III. Conclusion

For the foregoing reasons, the Court denies Defendants' motion to dismiss and motion for *in camera* review of the grand jury minutes.

Dated: February 12, 2024
      Brooklyn, New York

SO ORDERED:

                    s/ MKB
              MARGO K. BRODIE
              United States District Judge